Martin to America's President. All right, please be seated ladies and gentlemen. Pleased to see so many of you here today. I didn't know that we attracted that kind of crowd. I feel like a rock star today. Thank you very much. All right, you'll call the case please. In the interest of R.J. alignment. All right, thank you. Now, it's normally our habit, I think as most of you lawyers are addressing me now, most of you know to allow 15 minutes per side and allow some time for rebuttal. And, of course, we factor in there that there may be questions from us to you, and so we'll factor that in as well. One concern or one question I would have is in light of the argument and the fact that some of it is repetitive, and I say that in the nicest way. Is it that all the lawyers wish to argue? If you do, then we'll have to divide the time differently, or if there is one lawyer who will basically argue on behalf of the appellant. So you tell me. Good morning, Judge. You might prefer to come up to the podium. All the lawyers who will argue, please come on up. And I'll let you introduce yourself for the record. I'm Mary Hayes, the assistant public guardian for the child appellants in 25-2157. Thank you. Christopher Williams. Good morning to the court. Christopher Williams, I'm assistant public guardian for R.J. only. Yes. We would like to divide our time, the 15 minutes, evenly, and I would like to reserve five minutes for a rip-up. All right. Very good. Good morning, everyone. I'm assistant state attorney Marina Parr on behalf of the people. I will be asking for only about 30 seconds of the court's time to formally adopt the arguments made by the appellant. I see. 30 seconds. I don't know if we have time to get in there. Thank you. Counsel? Yeah, I'll take the other 14 minutes. The appellant is Christine Amador. I'm assistant public defender. Yes. Very good. All right. Well, thank you all, and you may begin. Ms. Hayes will do the rebuttal, Your Honor. Yes. Very good. Ms. Hayes, the floor is yours. May it please the court, counsel. I would like to talk first about jurisdiction. I have a few points to make regarding the status of the child. It is the task of the trial court in a child protection case to first, at an adjudication hearing, determine the status of the child, as In re Arthur H. instructs. There is an additional task, if possible, the trial court should determine what the identity of a perpetrator, if it's possible on the facts, to do so. And here it is clear respondent mother inflicted knife wounds on her children. So that perpetrator identification is not an issue. But the status determination is. Here the people's petition for adjudication of wardship alleged, among other things, physical abuse due to inflicted injury. The Juvenile Court Act treats physical abuse differently. It expressly states in section 2-211, that findings of physical abuse are to be reported to the Illinois State Police. It also treats cases in which physical abuse was found differently, if a parent in section 2-285, files a motion seeking restoration of custody. A special investigation should take place at that time, to determine whether there are any charges or convictions. In this case, respondent mother does have three aggravated battery convictions. They arose from the same facts that gave rise to this case. Have they been adjudicated? Yes. She fled guilty to three counts. She was sentenced to a term of five years, served a caution that time. She was released from the penitentiary in May of 2025. Okay. So those parts of the Juvenile Court Act do treat physical abuse distinctly differently, from neglect or even abuse due to substantial risk of injury. There is an additional way in which this statutory scheme that seeks to protect children, treats physical abuse findings differently. And it appears in Ground F of the Unfitness Grounds under the Adoption Act, which instructs that where there are two or more findings of physical abuse, the latter one made by clear and convincing evidence, that that creates a rebuttable presumption of unfitness that can be used, if involuntary termination of parental rights is sought. That could still happen here, although we're not at a point where we know whether that will happen or not. So that status determination takes place at the adjudicatory hearing, which is only interlocutory until a final order of disposition is entered. A final order finally determines the right or status of a party. Here we submit that it is the status of the child that is in issue, whether the trial court erred in finding that these children were not physically abused. We submit that in doing so, the trial court made two significant mistakes at the initial adjudicatory hearing. Well, before we get there, what's your position on MRA-VS? I mean, is it controlling here or is it not? I know there was a discussion at the trial level by the trial court with regards to the Supreme Court's decision. For three different reasons, it is not controlling here. The first has to do with the string of cases that VS solved. These were parents' appeals, distinct from, you know, appeals regarding the status of the child, brought by a child, that were, in my opinion, exercises in futility. Parents had challenged one but not all of the adjudicatory findings and had essentially conceded that they were not fit, willing, and able to care for the child when the dispositional hearing took place. Justice Cobbs, in one of her opinions regarding mootness of an adjudicatory finding, said that concessions are often made in appeals. They can have consequences. And she decided that in that particular case, this is one of the cases that the court found instructive in deciding VS, that that mootness determination was appropriate because the parent could not prevail in terms of regaining custody of the child and also articulated no specific reason why a decision in their favor would put them in a legally different position than if they had not conceded the other findings and conceded that they were not fit, willing, and able to care for the child. Therefore, in that line of cases, which involves mostly cases in which a parent challenged abuse due to substantial risk of injury but not neglect, the court could say that that was moot on appeal, which is distinctly different from a trial court saying, I don't need to decide physical abuse here because it's not the task of the trial court to take a decision about mootness on appeal and then avoid making the decisions that it's tasked to do, which is decide the allegations in the petition for adjudication of wardship, determine the status of the child, and then proceed to final disposition. You raise an interesting point that I really didn't see in the briefs. You're really focusing on more of the trial court's decision that it didn't need to decide a motion to reconsider the finding or the lack of finding, I guess, as to physical abuse because it was then moot. Was it moot at that stage? We submit that it remained a live controversy because the status of the children, the three children for whom the mother inflicted knife wounds on these children, should be treated differently than other cases involving neglect or abuse due to substantial risk of injury, which doesn't even necessarily involve physical harm at all. So I think that this remains a live controversy. There's an additional thing regarding V.S. that I think deserves consideration here, and it is an older case, Faith B., that V.S. relied on in saying where physical abuse can be found moot, but it involves a credibility determination. And the trial court there heard the mother's testimony denying any physical violence and found her not credible. Normally, a reviewing court need not revisit a credibility determination. And so it's not surprising at all that in Faith B., the court there said we're affirming neglect. We don't need to revisit that physical abuse finding. And then they reached the important question that was presented there, which was where there's a combination dispositional order, permanency order, and establishing a private guardianship, that that could be reviewed. So they were instructing the reviewing court, yes, that is something you can appeal, that a parent, I'm sorry, that the reviewing court could review. Do you think there should be a different rule in terms of mootness when it's the parent's opinion versus the children? When it specifically involves the status of the child as physically abused, yes. I think the same is true for sexual abuse and some of the other definitions under 2-3, including torture. I think that those things are important status determinations that have legal consequences, specifically regarding physical abuse, as I stated. It is expressly stated that those cases are treated differently in the statute. One final point regarding the trial court's decision on the motion to reconsider, at page 122 in the transcript, the court made what I think is a significant factual error and confused in re KC, and I'm identifying it by a docket number because there is another KC case cited in the replibraries. This is the excessive corporal punishment case, 24-0430. I think that the trial court confused the facts of that case with the facts here. The court said that the mother stated in the records, and I'm quoting, this was probably one of the things that the court found that could be credible, is that the children sometimes fought and there were scratches among the children. It continues that that may explain some of the abrasions. It may not, but the court cannot guess, and I scoured the record. I scoured all of the exhibits, the transcripts, to see if I could find any statement from the mother in this case attributing any of the injuries to siblings fighting, and I found none. Counsel can correct me if I'm mistaken about that. But that did happen in KC because there are the parties stipulated that the mother did attribute some of the scratches on her child to siblings fighting. Are you aware of any cases where a reviewing court has said that the juvenile court erred by not finding abuse or neglect? Yes. I guess I'm somewhat confused by Your Honor's question. Well, I mean, you know, here there was an actual finding, wasn't there? The judge at the initial adjudicatory hearing said that he could not find physical abuse because of in-way KC, which I think does not compel that result given the significant factual differences, the knife wounds to the children, the mother's aggravated battery convictions, the statements that the children made in their victim-sensitive interviews, the 10-year-old girl RC indicated that the mother had been drinking, that she gave permission to eat the grapes, and then on waking later forgot, found them gone, and flew into a rage demanding to know who had eaten them. After she started inflicting the injuries, one of the girls, a 7-year-old girl, said that she needed privacy in the bathroom, and the mother said to her, you're going to be peeing and pooping when I kill you. I think there's ample evidence of emotional harm to these children that was not present in KC, that clearly the trial court heard. He himself said what happened here is horrendous and horrific. So I think that... So what makes physical abuse more abusive than some other type of form of abuse? Well, the statute specifies that it's treated differently. Okay. But I think it's also important to consider the physical and emotional trauma to the children. I don't mean to minimize how neglect can be harmful to a child. It certainly can be. It can be extremely detrimental. But the statute does specifically treat physical abuse differently. Neglect is not reported to the Illinois State Police, but physical abuse and sexual abuse should be. That's why we're asking your honors to remand with instructions to enter findings of physical abuse and direct that the reporting requirement should be followed, so that those findings should be reported to the Illinois State Police. Thank you. Good morning to the court. May it please the court. I'm Christopher Williams, assistant public guardian, arguing for RJ. First of all, the main controversy in this appeal right now is mootness. The mother has not contested the evidence about whether it shows physical abuse. The mother has not explicitly conceded physical abuse, but in the response brief there's no contest about the evidence. We feel like, in terms of the facts, if this is not physical abuse, what is? The trial court itself characterized this incident as horrendous and horrific, and it is. I wanted to hone in in my short time here on some of the questions posed by the court, especially your honors' question, Mr. Justice Reyes. You asked, what makes physical abuse different? I wanted to emphasize, as I did in my brief, that this court has explicitly held that physical abuse in KC is a distinct category, basically calling it stringent and special. The court in KC reversed the physical abuse finding while also affirming the other adjudication findings. The court in KC found it necessary to look at that physical abuse finding specifically because the statutory criteria is more stringent. The actual word was used. We have precedent from this court stating explicitly that physical abuse is a different category. That argument was not directly responded to in the mother's response brief. Physical abuse is definitely distinct. We see that in KC. I also wanted to point out the My point is, it's not so much is it different, but is it more serious? I mean, obviously, you know, from a practical standpoint, yes, right? But in terms of looking at it from a legal standpoint, in terms of our interpretation of the statute and the cases, is it more serious? Yes, Your Honor. KC held that explicitly. And it's important that in KC, the court was comparing the incident and saying, is this excessive corporal punishment or physical abuse? And in this case, we have a contest between excessive corporal punishment and physical abuse. The same thing. KC said specifically the statutory criteria is more stringent for this more serious form of abuse. I'm paraphrasing. I don't think they actually said more serious form of abuse. But the only way to read KC's decision is in that way, is that physical abuse is more serious. And that accords with common sense. I mean, if you think about it, a parent whose child has been found neglected due to a dirty house or possible domestic violence, that creates an entirely different set of conditions going forward for the reunification process, as it does for a parent who's attacked her children with a knife. The services are different. And we pointed out in our brief, throughout the Juvenile Court Act and the Adoption Act, there are several sections that focus on a parent's need to correct the conditions that cause the child to be brought into foster care. And if there are not accurate adjudication findings, that can't be done, especially in between physical abuse and something else. This court is, for example, let me interrupt you for a moment. The fact that the court did not find excessive corporal punishment doesn't preclude, in any talks of reunifying the family, doesn't preclude the facts of what happened here from being brought to the court's attention, so that it isn't a matter of simply if there is no finding, then when we talk about reunification, to use your example about a dirty, about an unkempt home, if there are other factors, other things that occurred, whether the court made specific findings about those things or not, they still may be relevant when we talk about reunification. So do you understand my point? I do. All right. Then I'll let you take over. So, Your Honor, my response would be is that the fact that actually what happened is relevant, but it's relevant in any sense. So in future, as this case goes on, the court will consider exactly what happened and calibrate services and so forth. But the court decided that a parent attacking her children with a knife, number one, is a formal punishment. We find that untenable. We find it almost absurd, frankly. And I don't like to use that word, but parents do not discipline their children with knives by cutting them. So excessive verbal punishment, that this is what we have here, the court's responding to that, that implies that a parent can correct that by going to parenting classes, by going to some service like that and saying, well, well, Mom, you know, you've got a different way to discipline your children. And this is not that. This is not a parent who is trying to discipline her children. This is a parent who went on a knife rampage. It's impossible for a parent to excessively corporal punishment their child with a knife. That's what we're so concerned about here. And we're concerned that trial courts in the future will just smooth all these adjudication findings out and say, well, I'm going to find neglect and I'm not going to worry about physical abuse because I don't need to, because we're going to get to the dispositional here. It will incentivize trial courts to, in certain instances, to not take a close, focused look and present accurate adjudication findings. From the standpoint of a child, the accuracy is critical. It is critical. And one difference between V.S. and this case in terms of, it was asked whether there was a difference between a child who's appealing this and a parent. So when the V.S. court was examining collateral consequences, the first thing the Supreme Court talked about was the fact that parents are not adjudicated neglectful, but a child is adjudicated neglected. So this is important. So that means that the findings don't go to the parent. They don't apply to the parent. But for a child, it's very different, that the adjudication findings finally determine the status of that child, and it's fixed and it's definite. And that's a big difference between V.S. and this case, and it shows the difference between a child appealing and the position of a parent. V.S., we brought it up immediately. First, in our brief, of course, we had to deal with it. It is not applicable. The V.S. court in none of the cases, the appellate cases that it was resolving, that conflict, none of them involved physical abuse. And the court, the V.S. court, I think appropriately, well. But the trial court felt that it had to follow V.S. I mean, in transcripts it appears that the trial court was aware of V.S. and said, you know, because of this, you know. Well, I'm not sure about that. It's unclear to me, Your Honor. I think the trial court mentioned V.S. and mentioned mootness, but I don't see how the court could be following V.S. because V.S. was solely concerned with appellate jurisdiction. Personally, I don't know how mootness as a concept is applied in the trial court. It's often applied in the appellate context in terms of the reviewing court and what relief they can get. So the trial court's comment is what precipitated my argument about I'm worried about trial courts just saying anyone's findings good enough. I'm worried about that. And, you know, there's no review of the trial court's determination of appellate jurisdiction here in terms of mootness. Trial courts don't make those determinations, obviously. So I think that's what the trial court was talking about, and it didn't feel like that mootness principle would apply within the trial court as it's deciding things. And I know my time is coming to an end here. I wanted to make one last point that the mother's response said in their brief, they said the public guardian's worried about the legal labels that are put on this. We're arguing these are far more than legal labels. The Illinois legislature has clearly and definitively set forth statutory categories. The difference between a physical abuse finding or a sexual abuse finding is distinctly different from neglect finding or abuse due to substantial risk of physical injury. Why would the Illinois legislature find it necessary to make distinctions and create different categories? I believe that if R.J. is, and the siblings as well, are precluded by mootness from bringing this, then it's ‑‑ So is your argument that the labels here that are utilized is irrelevant then? No, my argument is the exact opposite, Your Honor. If we treat these statutory categories as mere labels, and any one will do, then we are rendering the entire statute portions of it superfluous. So my argument is about statutory interpretation. We don't want to render these statutory categories superfluous. The outcome of ruling in the mother's favor is that they will be superfluous. The rule will be, to put it simply, to boil it down, is that any adjudication finding will do, anything, regardless of the facts. You could have a case where there's evidence of sexual abuse, physical abuse, all kinds of things, and the court will say, I'm going to find neglect. I don't need to find anything else. That would be a terrible outcome for children. That's not what the Illinois legislature intended. If that's what the Illinois legislature intended, they would have said, determine abuse, determine neglect, and that's it. But they set forth distinct categories. And KC recognizes the statutory criteria. That was the language from KC. KC recognized that specifically. So I think this court, we ask this court to be concerned with creating a uniform body of law, consistent body of law on this.  Is there any procedure that would allow for the trial court to reconsider its finding of no physical abuse? If that's really what it was. I mean, I think it was more. No, no, Your Honor. In fact, no, there is not. We did our motion to reconsider, and we lost. And that's it. The finding is done. And this is a critical point in terms of mootness and also jurisdiction. An adjudication finding is final. It fixes the status of RJ and his siblings. Finally, and finally. It fixes it. And there's no way to revisit it. I made this point in terms of the jurisdictional question. This is a final determination. That's how these cases work. We're going to figure out how a child was abused, how a child was neglected, and then that sets the stage for how the rest of the case goes. A case where a child is physically or sexually abused proceeds far differently than a child who is neglected due to an injurious environment. And I think that's for obvious reasons, for obvious reasons. So, no, the answer is no, Your Honor. So if the mother had appealed the findings, the other findings of abuse and or neglect, would you have been able to argue on appeal that the physical abuse finding was in error? Yes, yes, we would. So in terms of if the mother filed an appeal of all the adjudications that reverse the neglect, abuse, substantial risk of injury, and the excessive corporal punishment, yes. We may have filed a cross-appeal, but that's not what happened here. So I would say that in the future, I mean, this is, I'm thinking if I was a parent and I and my child was found to be neglected due to an injurious environment, abused due to substantial risk of injury, and physically or sexually abused, it may be that that parent and that parent's attorney on appeal could say, you know, these are so different. I don't have a meritorious argument to challenge the neglect finding, the neglect environment injurious finding, because there is evidence to show that. I need to do, I'm kind of doing an Anders, you know, motion on that. But physical abuse, especially when a parent has been found to be the perpetrator, if I'm a parent, I want to say, I want to be able to go to the appellate court and say, but physical abuse, this is incredibly distinct. It's a stringent statutory category. Look what K.C. said. K.C. said it. So this court should really think about how its holding will affect that. And, you know, the public party usually doesn't argue on behalf of parents, but we're focusing on the physical abuse and its distinct nature. But I think it does apply to parents equally. If I was a parent and I was saying, you physically abused your children, I want to say, no, I didn't. No, I didn't. There may have been neglect, but I did not physically abuse my child. That's a distinct difference. One further question on the physical abuse aspect. Does it in any manner, shape, or form change the obligation for the reporting requirements if there's no physical abuse? Or do you have to find physical abuse for there to be a constant obligation for reporting? Reporting, would that be reporting to the state police? Yes. Well, that, to my understanding, you need to find it. And, I mean, without finding a physical abuse, I can't see what authority any court would have in notifying the state police. I hope that answers your question.  Okay. If there's no further questions, I thank the court for its time. Thank you. State? Good morning, and may it please the court. Good morning. I'm Assistant State's Attorney Marina Parr on behalf of the people. We join in and adopt the arguments made by both guardians and guardians ad litem this morning and join in their request for this court to send this case back down to the lower court with instructions to enter orders of physical abuse for all three children. Thank you very much. Thank you. Thank you.  Good morning. May it please the court.  I'm Assistant Public Defender Benjamin Ginske on behalf of the mother, Catrice D. Justices, we're asking you today to dismiss the public guardians' appeal. That's because this court does not have jurisdiction to review the order that they're asking to be reviewed, and furthermore, because even if the issue were reached, it's moot. The overarching reason for that, for both of those legal outcomes, is because contrary to what they've represented in their briefs and what they perseverated on here at oral argument today, counsel for both the siblings and RJ, the Juvenile Court Act does not attach any particular outcomes about the outcome of the case to the sub-definitions of abuse, neglect, or dependency contained in Sections 2-3 and 2-4 of the Act. And that's something that makes this very different than criminal law and is sometimes difficult to address on new public defenders doing this work. But you are in for a penny, you're in for a pound. They have characterized this physical abuse as a status that the legislature has created, which would therefore affect appellate jurisdiction, because it's finally determining the status of a party. There's no dispute about the statuses of the children here. The court determined their status as abused and neglected, which if you go to Section 2-3 of the Act, the way the legislature worded it is children who are abused include several sub-definitions. But the relevant status created by the Juvenile Court Act is abused, neglected, and dependent children because the whole Juvenile Court Act scheme is jurisdictionally limited to abused, neglected, and dependent children. Similarly, this court's jurisdiction is limited to appeals from final orders. It is the dispositional order in the Juvenile Court Act scheme that results in a final order. It actually determines a child's status as a ward of the court. Which grounds the trial court had Juvenile Court Act jurisdiction under is an interlocutory order that is just part of reaching that final order. Now, in terms of, of course, whether the appeal of the final dispositional order can reach aspects of the adjudication order, there admittedly are different ways of phrasing that rule. It's well known that the appeal of a final order can encompass appeals of interlocutory orders. The way they have phrased the rule, and admittedly, if you take statements of this court and the Supreme Court out of context, you can frame the rule as an interlocutory order becomes final when a later final order is entered. But I believe to take that statement and say that every act of the court, every interlocutory order leading to the final order becomes final, drastically overstates the rule of appellate jurisdiction. I have a question. Yes, Justice Riggs. So, in your brief, you don't address the issue of whether or not the juvenile court should have found physical abuse under these particular facts. All right? Do you have a position on that? I mean, the court, you know, heard everything. There's an obvious testimony with regards to it. There didn't seem to be any question about credibility.  Sure, it's correct that the facts, Justice Riggs, it's correct that the facts are not disputed here. But I believe what the record shows is the trial court correctly holding the state to their burden, making sure the elements of physical abuse were met, which the record shows the court really grappling with whether disfigurement or physical effect were shown by the evidence that was brought forth, while at the same time saying that while this is clearly in a lay sense, physical abuse under both this court's decision in KC and the legal terms contained in the act, the state's burden hadn't been met. And I believe that this court can't review that order. Even if it did, it would have to apply the standard of review, which is very deferential to those findings. I mean, while we're talking about the trial court's rulings there, and I have the transcript in front of me, I believe the statement that the trial court believed it was precluded by V.S. from hearing their motion to reconsider is completely belied by the record, because there's several pages of transcript of the court dealing with their motion to reconsider and denying it. The comments about the effect of V.S. and mootness, which were made at the outset on pages 118 and 119 of the transcript, are that the court says, I'm not just going to add physical abuse because you're asking me to, because the appellate court's decision of V.S. would mean that the mother, Caprice D., would have no right to an appeal of that. Therefore, I'm going to very assiduously apply the burden of proof to the facts I've seen, because it's something that the mother is unlikely to have a chance to get reviewed. Why is that? Because of the court's decision in V.S. Why would the mother not have been able to appeal? For the same reason that the issue is moot when raised by the public argument. If she didn't challenge, what if she challenged all the findings? If she challenged all the findings, I believe this court would, first of all, she has not filed an appeal, and we waive our right to an appeal. I'm just asking why the trial court would say that. I believe that, Justice Rochford, the trial court correctly recognized that because there was no dispute that the children were abused and that she breached her parental duties and therefore neglected them through this horrible set of actions that she went to prison for, this court would correctly, under the Supreme Court's case of V.S., deem the finding of physical abuse moot. They would say we can affirm on any ground. Let's just do a hypothetical kind of situation. I mean, there is a chance if a parent appeals two or three findings of abuse and neglect, and this court could reject two of the findings and decide it on one, and what if that one was the one that the trial court said, well, I don't need to decide it because I'm guessing the appellate court's going to affirm the other two. So it's moot. I mean, that seems to be what the trial court was saying there. If the trial court had found physical abuse and abused due to substantial risk of injury and any other form of abuse under the Act, and Ms. Denmark had filed a notice of appeal and argued that all of these findings of abuse are against the manifest way of the evidence, the public guardian would say you can affirm on abuse of substantial risk of injury and neglect due to injurious environment, which is clearly the case regardless of any proof deficiencies with the physical abuse about disfigurement, and this court could affirm on any ground. Yes, we could, but is that for the trial court to abdicate its duty to make decisions by saying, well, the appellate court's going to do X, Y, and Z, and so this one, you don't need this one. Justice Rockford, the trial court didn't abdicate that duty. It then spent four or five more pages of transcript grappling with the proof it sought and denying the motion to reconsider, which received a full hearing. I believe the comment about appellate mootness was just to explain one of the many reasons, though you don't need extra reasons, to assiduously apply the burden of proof. Returning to the issue of jurisdiction, I just want to add a question about your arguments regarding our lack of appellate jurisdiction. Yes, Justice Ross. In reading the cases, they seem to be going contrary to what you're proposing here today with regards to the outcome in the case for the result and a change in the disciplinational order. The cases you cited in reading those cases seem to be a little bit different than that. So the cases, for example, that the public guardian relied on for their high-level rule statement that an appeal of a dispositional order can include review of the adjudicatory findings, such as deniarity, Zaria A., Berrion S., Leona W., All of those cases are cases where a parent attempted to completely undermine a later final order, a dispositional order, or a termination of parental rights order, by an attack on the adjudication order saying, my child was never abused or neglected, and therefore the juvenile court had no jurisdiction, which, of course, would mean that any subsequent order is void ab initio. It's totally different than a prevailing party's appeal of an order that they believe should stand. They believe the order, the interlocutory order, that the children were abused was correct. The children were abused. And the dispositional order that they belong in foster care is correct, too. They're not taking issue with either the final order or the necessary step of finding abuse or neglect, but which definitional basis, physical abuse or abuse due to substantial risk of injury, should have been made at the adjudicatory phase, which is interlocutory. I believe it's similar to in the village of Lyle versus the village of Woodridge. At an earlier point in the case, several counts in their complaint were dismissed, and then the rest were later lost on summary judgment. One of their appeals was, well, also our counts three and four should not have been dismissed. And we have no jurisdiction to review that in a review of the disposal of the rest of the case, because losing some counts at an earlier point does not undermine that you lost the rest later. Just the same, such as the case of Inree A.H., when the state loses a termination of parental rights petition, when it's dismissed because they haven't proved their case at the unfitness case, they don't have an appeal of right from that under Rule 301, because the final order is the complete termination of parental rights order. And the way they've phrased the reason to distinguish that, the way they've attempted to distinguish that, is by saying that that unfitness order could be revisited later, and that's why it's interlocutory, where the adjudication order cannot be. I believe that's the incorrect distinction, because the state can no more retry an unfitness theory that they've already lost because of rest judicata, than they can retry on an adjudication theory that they've already lost. While they could raise a new unfitness theory or a new petition and try to prove the parent unfit some other way, they could do the same thing. They could file a new abuse or neglect petition against Ms. D. alleging some other facts or some other theory, and there's no statute of limitations, so they could search back as far as they wanted, if for some reason they felt it was necessary to obtain a different adjudication and dispositional order. The way I would phrase the real rule of appellate jurisdiction, rather than every single interlocutory act becoming reviewable in a later final order, an appeal from a later final order, is I would call it like a three-legged stool or a load-bearing wall theory. If your attack on the interlocutory order would knock out one leg of a three-legged stool, or knock down a load-bearing wall and bring down the whole final order, then your appeal of the final order legitimately can include an attack on that interlocutory order. If it's an eight-legged stool or a decorative wall, a facade, then it's not contained in the jurisdiction conferred by a notice of appeal under Rule 301. Addressing mootness, numerous times in the briefs and by the counsel for both R.J. and the siblings, today mostly the counsel for R.J., they have stressed the idea that the subsequent course of a case under the Juvenile Court Act is significantly different based on what adjudication findings a trial court has made. That a parent is going to have to do so many different things, do different services after a physical abuse finding versus any other finding. This is not true in the least, and that's why you have not heard a single alternative service that a parent would have to do, any other act they would have to do, any other court finding or order the court would have to enter in order to either reunify them with their children or terminate their parental rights or do any other act. You are in for a penny, in for a pound in Juvenile Court Act cases. I believe the example is a dirty house versus sexual abuse. You can lose your parental rights completely forever based on a dirty house and you can reunify with your children after severe abuse. It's something that is a, for attorneys and for the parents involved in the system, it is a difficult attitude adjustment to have to make to deal with the juvenile court's vast discretionary power in these cases. But that is... Well, I got to correct you a little bit on this. Somebody who has a dirty house is not going to be getting the same kind of treatment or services that someone that's been found to be physically abusive. It's just not going to happen. Justice Roffert, I represent parents in these cases at the trial level too, and I'm speaking, it is, the services are essentially the same for almost all the parents. It's far more determinative to the ultimate outcome of the cases if the child is placed with people desirous of adopting them than it is how severe the original abuse was in my experience. And the other attorneys have not pointed to any legal, any provision of the act. And besides this court's decision in KC for 2024 for their proposition that physical abuse is, they say it's more serious in an abstract sense and perhaps in some moral sense they are, but in terms of law, which determines the application of the mootness doctrine, they have not pointed to anything concrete. And they have a burden when they're attempting to overcome mootness to show specific examples. As far as the back reports, the Illinois State Police, in this case it's moot. Ms. Cappers D. went to prison. She's already known to the state authorities, including the state police. Her children are currently in foster care. They were adjudicated abused. And they have speculated that parents would have different services. In one of their briefs they imagine a scene between her and a therapist, but there's nothing concrete in either the law or the record that they can show would flow from a different adjudication finding. Does that answer the question? It does answer the question. There's a final, I mean, the point about sort of the statutory interpretation argument, that Ms. D.'s argument at this point or a decision in this case would, I believe in the worst case, smooth out the different definitions under the neglect and abuse headings in the Juvenile Court Act is misplaced because I don't believe it flows from this argument or this case at all. It is, in fact, part of the design of the statute, and it is the consequence of the appellate court and the Supreme Court's decisions that are governing law. Going as far back as the Supreme Court's case of Arthur H. and the cases before it that neglect due to an injurious environment is an amorphous standard meant any time there is a breach of parental duty, that essentially swallows every other form of neglect or abuse. Every form of neglect or abuse, definitionally, would include a breach of parental duty that undermines a child's well-being. And then with the Supreme Court's case in B.S., the appellate court is not the appellate. Our reviewing courts are not going to review distinctions like this. There are no lesser included offenses under the Act. The Act is the codification of the judicial branch's ancient parents' patriarchal powers. It's essentially an equitable scheme. At the beginning, there's this threshold question done according to legal procedures to make sure is this child abused, neglected, or dependent before we can exercise the court's juvenile jurisdiction. But once any of those findings are made, the court is essentially using equitable powers. There are certain procedures and restraints placed in the statute, but that's why when, for example, parents face termination of parental rights and their appellate theory is I lost all parental rights, my relationship with my child was severed forever, because of conditions that had a tenuous or absolutely no relationship to what was found at my original abuse or neglect trial, they don't prevail. They lose their termination trial, and this court affirms, because any facts that may undermine child well-being apparently are germane for termination of parental rights proceedings. They don't have to be brought in a new petition. Termination of parental rights petitions, the practice seems they don't have to plead any facts. So the termination trial, in the brief I cited several examples. A trial finding that is an adjudication order finding that is specifically limited to the mother's inability to mix formula bottles. She loses parental rights in large part because of a relationship that the caseworkers disapproved of with a man. Somebody else had a black eye at a meeting with the caseworkers and had to do domestic violence services. It had nothing to do with the original adjudication order. That's why they lose parental rights. So similarly in this case, if Ms. D moves to reunify with her children or the state moves to terminate her parental rights, all parties will be able to make use of the underlying facts of the adjudication, whatever has happened in her services, and... Would it have made a difference if there was a finding of physical abuse here? No, there would not have. And if you're looking at it, you know, again, if she wants to, as you said, get together with her family, isn't that important? To have a finding of physical abuse, is it just a regular abuse? The court has to be assured that the conditions have been corrected, that she has been restored to being a fit parent. And in Ms. D's case, that would require that she has rehabilitated whatever underlying conditions led to her abusing her children, that she's not going to do it again. Obviously, it's a very case-specific judgment. But as the record shows, the court found her actions were horrendous. She did the acts in question. She went to prison for them. She will have to bear the burden, if she moves to return home, of showing she has corrected those conditions and is once more a fit parent. That task is not different. Because I think, actually, legally in a return home order, what you're rebutting is not the adjudication order. You can't un-abuse your children. You're rebutting the dispositional finding that you are an unfit parent at that time. Though it's a final order, that's a finding that's always subject to modification. A return home order is really a request to modify the previous finding of unfitness and show that you're now a fit parent. And the entire scheme presupposes that we're going to be returning children home to parents who have abused or neglected them. Otherwise, termination of parole rights would be prescribed in every case. Whether that will happen in this case is unknown. The parties who are saying it's not would have not pointed to anything that is concrete, one way or the other, that would either require termination of parole rights, preclude it, or meaningfully affect return home. So for those reasons, we're asking for their appeal to be dismissed. Thank you. I appreciate your taking the time. I'm going to try to be brief. It is absolutely not true that the services are all the same for all the parents in child protection cases. I've handled these. I handled my first child protection case in 1990. I've seen many of them. Dirty house cases, there's a housekeeper. There are homemaker services. They're, you know, they're extremely different from cases like this one in which the services for the parent would include, you know, addressing the extreme nature of the harm to these children. But in addition, the physical abuse findings can factor into services that are important for the welfare of the children. Whether or not there's return home or not, the children having been physically abused are often given trauma-informed therapy that helps them recover from this, and it's important for their well-being, you know, in any event. I guess two quick points I want to make is that counsel has not explained how the definition of unfitness, Ground F, treats physical abuse differently, how 2285 treats physical abuse differently, how 2-211 treats physical abuse differently, and the approach urged by him would render those parts of the statute meaningless, superfluous, in violation of the rules of statutory construction. I'd like to also conclude by saying that a decision in Respondent Mother's favor here on his jurisdiction and mootness claims would mean that this court would lack any power to correct the kinds of significant factual errors that the trial court made here in confusing the facts of KC where that stipulation was made, you know, making a credibility determination in this case that was not based on the evidence, in addition to legal errors. Justice Rochford asked about is there any remedy that could get the trial court to reconsider, and I submit that your honors could remand with instructions to say KC is decided on the facts of KC. These cases are sui generis. You are to decide the cases that are before you based on the facts before you, not comparing and weighing the pictures from KC with the pictures in this case. I think it would be appropriate for your honors to do that. And as I said, we're requesting remand with instructions to enter findings of physical abuse and follow the reporting requirement. Thank you. Can you just answer the jurisdictional issue of, I believe it's because you're not appealing the dispositional order, you don't get to challenge the... So, you know, to prevail a parent would have to either articulate how a decision at the adjudicatory hearing legally makes a difference to them, or attack also the dispositional order. Here, you know, the children needed to come into care, needed to be placed in the custody of the DCFS guardianship administrator, continue to need services, and no need should exist for us to challenge the actual adjudication of wardship in order to bring to your honors' attention the kinds of factual and legal errors that the trial court made in the adjudicatory hearing. And to end on the motion to reconsider, where this case involves allegations of physical abuse due to inflicted injury, something that was not analyzed in the decision and in RAVI-S. Thank you. Thank you. Well, we'd like to thank all of you for a very interesting case. And we will take the matter under advisement and issue a written decision in a reasonable length of time. And with that, the matter will stand adjourned.